**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES SIMONSON,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:18-2445** |
| **v.** | : | **(JUDGE MANNION)** |
| **BOROUGH OF TAYLOR and WILLIAM ROCHE,** | : | |
| | : | |
| **Defendants** | | |

**<u>MEMORANDUM</u>**

Pending before the court is a motion for summary judgment, pursuant to Fed.R.Civ.P. 56, filed by defendants Borough of Taylor and William Roche (collectively "defendants"), (Doc. 38), with respect to the amended complaint, (Doc. 15), of plaintiff Charles Simonson. Plaintiff basically claims that defendants falsely arrested and imprisoned him and, maliciously prosecuted him without probable cause in violation of his 4th and 14th Amendment rights. Plaintiff alleges that the Borough violated his constitutional rights by failing to establish and maintain a policy to train and supervise Roche and its police officers on how to properly determine if probable cause exists to arrest citizens and to seize their vehicles. Plaintiff brings his constitutional claims under 42 U.S.C. §1983. In their motion, defendants argue that they are entitled to summary judgment on all of plaintiff's 4th Amendment claims since

there was sufficient probable cause to arrest plaintiff after his estranged wife, Loretta Simonson ("Loretta"), told police that plaintiff tried to kill her by firing a shotgun at her while she slept. Plaintiff's wife also told police that plaintiff threatened her and that she was fearful he might come back to their house. Thus, defendants contend that they cannot be held liable based on the undisputed facts regarding plaintiff's arrest and prosecution since they reasonably relied upon Loretta's allegations, along with corroborating physical evidence obtained in their investigation, that plaintiff tried to shoot her and that she was in imminent danger, despite the fact that her allegations were later found to be false. Despite the unfortunate circumstances that befell the plaintiff, his multi-count complaint against the defendants, in light of the undisputed facts, is patently frivolous. It is extremely difficult to comprehend how an experienced attorney could file a case such as this, in good faith. As such, the court will **GRANT** the defendants' motion for summary judgment with respect to plaintiff's constitutional claims. The court will decline to exercise its supplemental jurisdiction over plaintiff's remaining state law claims and they will be **DISMISSED WITHOUT PREJUDICE**.

## I.    BACKGROUND[1]

In his amended complaint filed on May 30, 2019, (Doc. 15), plaintiff raises the following constitutional claims under §1983 against Roche: unlawful seizure and search of his person in violation of his 4th and 14th Amendment rights, Count I; malicious prosecution, Count II[2]; and false arrest and false imprisonment, Count III. In Count IV, plaintiff raises a 14th Amendment stigma plus due process claim against Roche and the Borough of Taylor. Plaintiff also raises state law claims against both defendants in Count V for false light and defamation. In Count VI, plaintiff asserts a state law claim for assault and battery against Roche. In Count VII, plaintiff raises a municipal liability claim against the Borough of Taylor under Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 694 (1978), for failure to adequately train and supervise Roche with respect to probable cause. Finally, in Count VIII, plaintiff raises an unlawful seizure and search claim against both defendants regarding his vehicle in violation of his 4th and 14th Amendment rights.

---

[1]Since the court stated the background of this case in its December 10, 2020 Memorandum, (Doc. 36), it will not fully repeat it herein.

[2] In Counts II and III, plaintiff also raises a state law malicious prosecution claim and state law false arrest/imprisonment claims against Roche.

Plaintiff basically alleges that Roche arrested him on November 7, 2018, for discharging a shotgun at his wife Loretta without conducting a proper and thorough investigation before filing the charges against him, and that the Borough of Taylor failed to properly train and supervise Roche.

As relief in his amended complaint, plaintiff seeks compensatory and punitive damages as well as injunctive relief. However, plaintiff cannot seek punitive damages against the Borough of Taylor as he attempts to do in Count IV since the Supreme Court has held that punitive damages may not be awarded against municipalities under §1983. *See* City of Newport v. Fact Concerts, Inc., 453 US 247, 271 (1981).

On December 16, 2019, after discovery was completed, defendants filed their motion for summary judgment, (Doc. 38), and their statement of material facts with exhibits, (Docs. 39 & 40). Defendants filed their brief in support of their motion on December 30, 2019, (Doc. 41). On January 7, 2020, plaintiff filed his brief in opposition to defendants' motion and his response to defendants' statement of material facts and exhibits. (Docs. 42 & 43). Defendants filed their reply brief on January 21, 2020. (Doc. 48).

The court has jurisdiction over this case pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343(a) because plaintiff avers violations of his constitutional rights under the 4th and 14th Amendments of the U.S. Constitution. The court

can exercise supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. §1367. Venue is appropriate in this court since the alleged constitutional violations occurred in this district and all parties are located here. *See* 28 U.S.C. §1391.

## II.    MATERIAL FACTS[3]

The following facts pertain to plaintiff's November 7, 2018 arrest. Specifically, on November 7, 2018, plaintiff was arrested without a warrant by Sergeant William Roche of the Borough of Taylor Police Department ("TBPD"). Roche handcuffed and shackled plaintiff, interrogated him, and then charged him with Criminal Attempt–Homicide, Aggravated Assault, Discharge of a Firearm into Occupied Structure, Possession of Weapon, Make Repairs/Sell/Etc Offensive Weapon, Terroristic Threats with Intent to Terrorize Another, Recklessly Endangering Another Person, and Simple

---

[3]The court only states the relevant material facts that are supported by citation to the record. Legal conclusions and argument are not included. A material fact is one that "might affect the outcome of the suit under the governing law...." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

Assault. *See* <u>Commonwealth v. Charles Simonson</u>, MJ-45101-Cr-0000426-2018.[4]

Roche first became involved in the criminal investigation for attempted homicide regarding plaintiff on November 7, 2018 when he was summoned to TBPD along with Officers Snyder and Holland by Chief Derenick.

As a backdrop, Derenick was called by Officer Priorelli of the Scranton Police Department about a welfare check at the Simonson residence located 112 West Taylor Street, in the Borough of Taylor. Loretta had reported to her doctor (Dr. McCall) that her estranged husband, plaintiff Charles Simonson, had fired a shotgun at her in her house. Loretta also indicated that plaintiff was going to kill the doctor. Loretta and plaintiff were married but separated during the relevant times of this case. On November 7, 2018, at 11:31 a.m., Derenick, along with Priorelli and TBPD Officer Dunn, went to Loretta's residence and knocked on the door. Loretta was visibly upset and appeared hesitant to open the door indicating that she was "afraid" because "he might come back." Loretta then allowed Derenick and Dunn into her house.

---

[4]The court again notes that the Lackawanna County Criminal Dockets for plaintiff, as well as Loretta Simonson, can be found at http://ujsportal.pacourts.us. The court takes judicial notice of the Criminal Dockets since they are official court records.

The police spoke with Loretta and initially she denied any altercation with her husband. When the police officers were about to leave the house, Loretta told them that she wanted to show them something. She then took the officers to a bedroom on the second floor and pointed to a hole in the wall. Loretta told the officers that it was a bullet hole and that her husband fired one shot at her a few days earlier on November 2, 2018, at 3:00 a.m.

Based on Loretta's allegations, Derenick and Dunn conducted an investigation and observed the hole in Loretta's bedroom wall which appeared to be from the discharge of a firearm. Dunn took photographs of the area in the room where the shot was fired. Also, the police observed an injury to the bridge of Loretta's nose. Loretta was then taken to TBPD for an interview.

Derenick also called First Assistant Lackawanna County District Attorney ("ADA") Judith Price and told her about the Simonson incident. Loretta was interviewed on November 7, 2018 at TBPD headquarters and gave police a written statement about the alleged shooting incident which occurred on November 2, 2018. (Doc. 39-7). Roche was not present for Loretta's interview. However, a representative from the domestic violence unit of the District Attorney's Office, Jeanne Rosencrance, was present for Loretta's interview along with TBPD officers.

In her November 7, 2018 written statement, prepared at 1:20 p.m., Loretta stated that as she started to fall asleep in her bed on November 2, 2018, "I heard my husband [plaintiff] say die, bitch. I heard the click of [and] I knew it was the sound of [plaintiff's] shotgun. He fired once, spraying me with the pellets from the shot. It missed my head putting a hole in the bedroom wall. I got up, he was running down the stairs. I ran after him turning, on the lights at my house. I heard unlocking the front door at the house . . ."

Additionally, Loretta wrote the following incriminating facts about plaintiff in her statement:

"I turned on the porch light, saw him throw the shotgun in a red car that was already running. He flipped me his middle finger and said 'fuck you! I'm going to kill your Dr.! Then he drove off. It's because he had to pay more spousal support for [the doctor] declaring me disabled. I felt my face burning and smelled smoke. I patted my sheets and my pillow case because they were smoking. I realized that it was out and I stayed up the rest of the night and all the next day."

Loretta subsequently testified that she waited almost a week before she told anyone about the November 2, 2018 shooting incident because she was not going to report the incident at all, that she just wanted to get out of

the house and give her husband whatever he wanted. Roche later testified that was not uncommon to delay reporting alleged spousal abuse incidents.

Roche eventually met with Derenick on November 7, 2018 to discuss the investigation and Derenick appointed Roche to be the lead investigator in the case. Derenick told Roche that he and other officers had gone to the Simonson home and saw a bullet hole in the wall, as well as the marks on Loretta's face that allegedly resulted from plaintiff shooting at her. Derenick also advised Roche that Scranton police had received a call from Loretta's doctor and that the doctor indicated Loretta claimed that she had been shot at by her husband. Roche then prepared the paperwork to be filed against plaintiff, meaning the criminal complaint and affidavit of probable cause. Roche also conferred with the District Attorney's Office, including the Deputy in charge of the domestic violence unit.

Roche was further advised by Derenick that ADA Price had approved of the charges to be filed against plaintiff. Crimes above a misdemeanor of the second degree, including felonies such as attempted murder, required the approval from the District Attorney's office before police were allowed to file them. However, Roche did not personally speak with ADA Price regarding Loretta's allegations against plaintiff when he was preparing the criminal complaint and affidavit.

After Roche completed the charging documents, he asked Derenick who he wanted to sign them and Derenick told Roche that as lead investigator he was to sign the documents. Roche then signed the documents on November 7, 2018. Roche later testified that Derenick was also involved in the preparation of the Criminal Complaint.

Thus, after Loretta's interview and the investigation conducted by TBPD police officers, on November 7, 2018, Roche prepared an Affidavit of Probable Cause in support of a Criminal Complaint charging plaintiff in the shooting incident. Roche had experience in conducting criminal investigations, including ones involving attempted homicide. Roche also received formal classroom training on probable cause through training provided by other law enforcement agencies, which was approved and paid for by the Borough of Taylor. However, Roche was never provided formal classroom training on probable cause by Taylor Borough.

In his Affidavit of Probable Cause supporting the charges to be filed against plaintiff based on Loretta's report, (Doc. 43-4), Roche averred that on November 2, 2018, at approximately 3:00 a.m., Loretta was awakened by her estranged husband, i.e., plaintiff, entering the bedroom in their house and said "die bitch!". Roche then averred that Loretta stated she heard the "racking of a shotgun" and that plaintiff fired one blast from the gun at her

while she was in her bedroom. Roche stated that the charges he filed against plaintiff were based on the evidence obtained at the Simonson home, the information Derenick uncovered, and Loretta's interview and statement.

After ADA Price approved of the charges to be filed by Roche against plaintiff, the Criminal Complaint, which indicated the ADA's approval, and the Affidavit of Probable Cause were signed by Roche. (Doc. 39-1 at 15-18).

However, since plaintiff was being arrested without a warrant[5], there was no signature from a Magisterial District Judge ("MDJ") on either the Criminal Complaint or the Affidavit of Probable Cause signed by Roche. (Doc. 39-1 at 17-18).[6]

In her deposition, ADA Price stated that she believed the charges filed against plaintiff were reasonable based upon the facts known at the time. She also believed that the warrantless arrest of plaintiff was justified based

---

[5]Under Pennsylvania law, a person arrested without a warrant must be arraigned within 48 hours of his arrest, and the arraignment procedure requires a neutral MDJ to make a probable cause determination. *See* Pa.R.Crim.P. 540 ("If the defendant was arrested without a warrant ..., unless the issuing authority makes a determination of probable cause, the defendant shall not be detained.").

[6]Although plaintiff docketed his Ex. F, (Doc. 47), as an "Arrest Warrant", it is actually a NCIC Worksheet notifying police to look for plaintiff as a wanted person for attempted homicide.

upon the applicable protocol and based on the fact that a felony had been committed and there was sufficient probable cause to charge him.

Subsequently, plaintiff was arrested while he was at work on November 7, 2018 by TBPD. Plaintiff's arrest was about 1½ hours after Roche was first advised of the alleged attempted homicide incident by Derenick. At this time, defendants had not interviewed any of Loretta's neighbors about the incident which lead to plaintiff's arrest.

At the time of his arrest, plaintiff was advised that he was being arrested for attempted homicide of his wife, and he repeatedly denied any involvement with it, stating that "I didn't do it", "I have no idea what was going on", and that "I was nowhere near there." Although the police questioned plaintiff at the time of his arrest, they did not speak with plaintiff about the incident before he was arrested.

Roche admitted that when he arrested plaintiff he said to him, "and so we meet again." In fact, Roche was familiar with the Simonsons since he had previously been involved with two police calls regarding them. One of those calls occurred in August 2018, when Loretta called the police and Roche arrested plaintiff and charged him with a misdemeanor following a domestic violence incident involving Loretta.

Upon his instant arrest, plaintiff was taken into custody and driven to TBPD and placed in an interrogation room. He was then given his <u>Miranda</u> rights. Plaintiff invoked his right to have an attorney present and the police stopped questioning him.

Thereafter, Roche handcuffed and shackled plaintiff and drove him to Lackawanna County Processing Center. Plaintiff was processed and his bail was set at $850,000. Since plaintiff could not post bail, he was then transported to Lackawanna County Prison and incarcerated. Plaintiff spent one night in prison and he was released on November 8, 2018.

At the time plaintiff was arrested on November 7, 2018, his vehicle, which was at his place of work, was impounded by Anthracite Auto pursuant to a call made by someone at TBPD, as part of the continuing investigation so that officers could prepare and execute a search warrant for the vehicle to look for evidence of the crime, including a shotgun and shells. Roche testified that he did not know if he made the call or if it was someone else did, but he was 99% sure that the call was to Anthracite Auto. However, at the time plaintiff's vehicle was seized and impounded, the police did not have a search warrant. Although a search warrant for plaintiff's vehicle was subsequently prepared and obtained by Officer Holland, it was not executed

and plaintiff's vehicle was not searched since "the course of the investigation changed before [police] could actually execute it."

Following his release from prison on November 8, 2018, plaintiff's impounded car was returned to him and he was not charged any fees related to the impounding.

In the evening of November 7, 2018, after plaintiff's arrest, the TBPD contacted the Pennsylvania State Police ("PSP") and requested that their forensic trooper process the alleged crime scene at the Simonson home. A search warrant for Loretta's house was prepared by TBPD Officer Holland and it was approved by MDJ Pesota. At 4:00 p.m., Derenick then assisted PSP Trooper Hitchcock in executing the warrant and searching Loretta's house for evidence. Hitchcock took photos. Evidence was then obtained from the scene consisting of suspected blood from Loretta's bedroom wall, plastic "wad" from the shotgun shell removed from the wall, pillow case with apparent blood stains, a section of the wall where projectiles entered, and pajamas.

Also, as part of the investigation, an application for a search warrant of the house in Waverly Township where plaintiff was believed to be living was prepared by TBPD Officer Holland. The application was approved by ADA Price.

The following facts lead to plaintiff's release from prison.

On November 8, 2018, Roche continued with the investigation, including interviewing Loretta's neighbors. One of the neighbors, Leilani Raguckas, provided Roche and other officers with information regarding the shotgun allegedly involved in the shooting incident and stated that Loretta told her a cat had knocked over a shotgun and caused it to discharge in the early morning hours of November 2, 2018. Raguckas also reported that Loretta later gave the shotgun to her daughter's boyfriend, Bradley Albrecht. Albrecht then gave police a statement and gave them the shotgun he received from Loretta. He told police that the gun had a spent casing in the breech when Loretta gave it to him.

Subsequently, Loretta was re-interviewed in light of the inconsistencies discovered with her initial statement to police. Loretta was brought back to the TBPD and she advised police that she had given away the shotgun plaintiff allegedly used to try and shoot her. Loretta was then given her Miranda rights and she was re-questioned about the shooting incident. This is the first time that Roche personally spoke with Loretta. During her questioning, Loretta told police that she had not told them the truth about the shooting incident and that she had lied to them.

At this time, Loretta was asked to provide police with a second written statement and she recanted the statement she gave to police the previous day on November 7, 2018. In her November 8, 2018 statement, Loretta indicated that her initial statement was false and, she denied the shooting altercation with plaintiff and stated that the shotgun had inadvertently discharged.

Roche then called ADA Price and advised her that he had re-interviewed Loretta and confronted her with inconsistencies about her prior allegations against plaintiff and her November 7 statement.

ADA Price and ADA Gene Riccardo then went to the TBPD to review the case, including Loretta's November 7 and 8 statements, the statements of her neighbor and the entire investigation up to that point.

It was determined that Loretta falsified her story to police about the shooting incident. Thus, on November 8, 2018, Loretta was arrested and charged with making a false statement to authorities. She was then taken from TBPD, processed, and confined in the Lackawanna County Prison.

Consequently, on the night of November 8, 2018, an MDJ was contacted and plaintiff's bail was reduced to ROR (release on his own recognizance) to allow him to immediately get out of prison. The next

morning all of the charges filed against plaintiff were withdrawn by defendants and plaintiff's impounded vehicle was released.

Based on the false information Loretta provided to police about the shooting incident involving plaintiff, she was charged with: 1) discharge of a firearm into occupied structure; 2) recklessly endangering another person; 3) unsworn falsification to authorities; 4) false identification to law enforcement officer; and 5) false report- falsely incriminate another. *See* <u>Commonwealth v. Loretta M. Simonson</u>, CP-35-CR-0002450-2018.

On April 25, 2019, Loretta pled guilty to Recklessly Endangering Another Person (second degree misdemeanor) and False Identification to Law Enforcement Officer (third degree misdemeanor). The remaining three charges against Loretta were *nolle prossed*.

On August 28, 2019, Loretta was sentenced to imprisonment for a minimum of 23 days to a maximum of 18 months followed by a 6-month period of probation.

## III.    DISCUSSION

Initially, since the parties state the correct legal standard with respect to a motion for summary judgment under <u>Fed.R.Civ.P. 56(c)</u> in their briefs,

the court does not fully repeat it herein. Suffice to say that if the moving party meets its burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party", In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003), then the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny,139 F.3d 386, 393 (3d Cir. 1998).

"Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citations omitted). To state a claim under §1983, "a plaintiff must demonstrate the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." *Id.* (citations omitted). "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior.*" Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). *See also* Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003) (citing Rode).

In his claims under §1983 raised in Counts I-III, and VII, plaintiff essentially alleges that defendants violated his 4th and 14th Amendment rights to be free from false arrest, unlawful search and seizure, false imprisonment, and malicious prosecution. In Count VIII, plaintiff alleges that defendants unlawfully seized and searched his vehicle. Based on Monell, plaintiff claims that the Borough failed to adequately supervise and train Roche. In Count IV, plaintiff raises his stigma-plus due process claim against Roche and the Borough under the 14th Amendment.

Insofar as plaintiff bring his unlawful seizure and search claims against defendants in Counts I and VIII under the 14th Amendment due process clause in addition to the 4th Amendment alleging that his arrest and the use of force constituted a deprivation of due process, the court finds that since 4th Amendment covers his stated claims, his 14th Amendment claims, as stand alone claims, must be dismissed under the "more-specific provision rule." "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process', must be the guide for analyzing the claims.'" Albright v. Oliver, 510 U.S. 266, 273, (1994) (citation omitted). *See also* Lawson v. City of Coatsville, 42 F.Supp.3d 664, 675-76 (E.D.Pa. 2014) ("[W]here the Fourth

Amendment covers alleged misconduct—such as searches and seizures without probable cause—a plaintiff's claims must be analyzed under the Fourth Amendment, not under the rubric of substantive due process."). Also, since Pennsylvania provides the constitutionally required procedures under the 4th Amendment for pre-trial detainees and affords them the process that is due for the seizures of such persons in criminal cases, there is no 14th procedural due process claim. *Id.* (citing <u>Stewart v. Abraham</u>, 275 F.3d 220, 228–29 (3d Cir. 2001) ("The Pennsylvania law requiring probable cause for arrests and a preliminary arraignment within 48 hours satisfies all that the Fourth Amendment requires[.]")).[7]

Defendants argue that they are entitled to summary judgment with respect to the constitutional claims plaintiff asserts against them in Counts I-III of his amended complaint under [42 U.S.C. §1983](#) since they had sufficient probable cause to arrest and charge him on November 7, 2018. Specifically, defendants argue that summary judgment should be granted regarding

---

[7]The court notes that plaintiff's reference to the Fourteenth Amendment in Counts I and VIII can be based on the incorporation doctrine, holding that "the Fourth Amendment and other provisions of the Bill of Rights apply on their face only to the federal government, and were incorporated against the states later by operation of the Fourteenth Amendment's Due Process Clause." <u>Williams v. Papi</u>, 30 F.Supp.3d 306, 311 (M.D.Pa. 2014) (citation omitted).

plaintiff's claims under the 4th Amendment, since Roche and TBPD had ample probable cause to arrest plaintiff in light of Loretta's statement, the evidence, and its investigation. They contend that immediate action was required since Loretta alleged that plaintiff had threatened her, tried to shoot her, and there was evidence supporting her allegations. Plaintiff argues that defendants failed to conduct a proper and thorough investigations before they arrested and charged him and that they lacked probable cause since they failed to interview Loretta's neighbors, Roche failed to personally speak with Loretta, and they failed to ask him about the incident before his arrest.

"The threshold question for each of [plaintiff's] Fourth Amendment claims [under §1983 for false arrest, unlawful search, false imprisonment, and malicious prosecution] is whether [defendants] had probable cause to arrest [him]." Lawson, 42 F.Supp.3d at 673 (citing James v. City of Wilkes–Barre, 700 F.3d 675, 680, 683 (3d Cir. 2012) (lack of probable cause is an element of a Fourth Amendment false arrest claim); Johnson v. Knorr, 477 F.3d 75, 81–82 (3d Cir. 2007) (lack of probable cause is an element of a Fourth Amendment malicious prosecution claim); Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995) (lack of probable cause is an element of a Fourth Amendment false imprisonment claim based on detention pursuant to an unlawful arrest); Henry v. United States, 361 U.S.

21

98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959) ("[I]f an arrest without a warrant is to support an incidental search, it must be made with probable cause.")).

Defendants argue that summary judgment should be entered in their favor on plaintiff's claims for unlawful seizure and search, malicious prosecution, false imprisonment, and false arrest since the undisputed evidence shows that he cannot prevail on all of the essential elements of his claims.

With respect to plaintiff's unlawful seizure and search claim, Count I, in Washington v. Hanshaw, 552 Fed.Appx. 169, 172–73 (3d Cir. 2014), "the [Third Circuit] Court has held that, if a right to be free from prosecution absent probable cause exists, it must [] be grounded on the Fourth Amendment's prohibition on unreasonable searches and seizures." "[Plaintiff's] arrest and [1]–day pretrial detention are seizures within the meaning of the Fourth Amendment." Lawson, 42 F.Supp.3d at 676 (citing Schneyder v. Smith, 653 F.3d 313, 321–22 (3d Cir. 2011) ("When the state places constitutionally significant restrictions on a person's freedom of movement for the purpose of obtaining his presence at a judicial proceeding, that person has been seized within the meaning of the Fourth Amendment.")).

It is well-settled that "[t]o prove malicious prosecution [under §1983, Count II] ... a plaintiff must show that: (1) the defendants initiated a criminal

proceeding; (2) the criminal proceeding ended in plaintiff's favor*;* (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." <u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 521 (3d Cir. 2003); <u>Kossler v. Crisanti</u>, 564 F.3d 181, 186 (3d Cir. 2009); <u>Piazza v. Lakkis</u>, 2012 WL 2007112, *7 (M.D.Pa. June 5, 2012); <u>Curry v. Yachera</u>, 835 F.3d 373, 379-80 (3d Cir. 2016). "[A] claim for malicious prosecution 'permits damages for confinement imposed pursuant to legal process.'" <u>Piazza</u>, 2012 WL 2007112, *8 (citations omitted). Further, "a claim for malicious prosecution seeks to remedy 'the deprivation of liberty accompanying prosecution, not prosecution itself.'" *Id.* (citations omitted). Additionally, "[the] [m]alice [element] may be inferred from the absence of probable cause." <u>Lawson</u>, 42 F.Supp.3d at 674 n. 8 (citation omitted).

A false arrest claim under §1983, Count III, also has an element requiring that the plaintiff show the criminal proceeding was initiated without probable cause. To succeed on a false arrest claim under §1983, the court in <u>Kokinda v. Breiner</u>, 557 F. Supp. 2d 581, 592 (M.D.Pa. 2008)*,* stated:

> A claim under §1983 for false arrest/false imprisonment is grounded in the Fourth Amendment guarantee against unreasonable seizures. <u>Garcia v. County of Bucks</u>, 155 F.Supp.2d 259, 265 (E.D.Pa. 2001) (citing <u>Groman v. Twp. of</u>

*Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)). To maintain his false arrest claims, "a plaintiff must show that the arresting officer lacked probable cause to make the arrest." *Id.* "Probable cause exists when the totality of facts and circumstances are sufficient to warrant an ordinary prudent officer to believe that the party charged has committed an offense." *Id.*

"[W]here the police lack probable cause to make an arrest, the arrestee has a claim under §1983 for false imprisonment based on a detention pursuant to that arrest." <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 636 (3d Cir. 1995). However, unlike a malicious prosecution claim, for which each criminal charge is analyzed independently, a false arrest claim will fail if there was probable cause to arrest for at least one of the offenses involved. <u>Johnson</u>, 477 F.3d at 75; *see also* <u>Barna v. City of Perth Amboy</u>, 42 F.3d 809, 819 (3d Cir. 1994) (holding that for an arrest to be justified, "[p]robable cause need only exist as to any offense that could be charged under the circumstances").

*See also* <u>Cummings v. City of Phila</u>., 137 Fed. Appx. 504, 506 (3d Cir. 2005).

In order for Plaintiff to prevail on his malicious prosecution and false imprisonment claims under §1983, he must satisfy each of the above stated elements. <u>Kossler</u>, 564 F.3d at 186. Further, "whether characterized as a false arrest, or couched in terms of malicious prosecution, proof that probable cause was lacking is essential to any §1983 claim arising out of the arrest and prosecution of an individual." <u>Price v. Zirpoli</u>, 2016 WL 3876442, *5 (M.D.Pa. Jan. 20, 2016), adopted by 2016 WL 3876646 (M.D.Pa. July 15, 2016).

"[A]n arrest requires probable cause." <u>Arditi v. Subers</u>, 216 F.Supp.3d 544, 552 (E.D.Pa. 2016). "Probable cause to arrest exists when the facts and

circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Id.* (citations omitted). *See also* <u>Lawson</u>, 42 F.Supp. 3d at 673 ("An arrest was made with probable cause if 'at the moment the arrest was made ... the facts and circumstances within [the officers'] knowledge ... were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense.'" (citation omitted). "In conducting an inquiry into whether probable cause to arrest existed, a court should consider the totality of the circumstances presented, and 'must assess the knowledge and information which the officers possessed at the time of arrest, coupled with the factual occurrences immediately precipitating the arrest.'" <u>Price</u>, 2016 WL 3876442, *5 (citing <u>United States v. Stubbs</u>, 281 F.3d 109, 122 (3d Cir. 2002)).

Further, "the probable cause standard does not turn on the actual guilt or innocence of the arrestee, but rather, whether the arresting officer reasonably believed that the arrestee had committed the crime." <u>Arditi</u>, 216 F.Supp.3d at 552. *See also* <u>Lawson</u>, 42 F.Supp. 3d at 674 ("In other words, the constitutional validity of the arrest does not depend on whether the suspect actually committed any crime.") (citation omitted).

Thus, "[i]f [defendants] had probable cause, then no constitutional violation took place [regarding plaintiff's claims for false arrest, unlawful search, false imprisonment, and malicious prosecution]." <u>Lawson</u>, 42 F.Supp. 3d at 673.

No doubt that "[g]enerally, the question of probable cause in a section 1983 damage suit is one for the jury", which "is particularly true where the probable cause determination rests on credibility conflicts." *Id.* (internal citations). "However, a district court may conclude that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding, and may enter summary judgment accordingly." *Id.* (citations omitted). It is the court's function "to determine whether the objective facts available to the officers at the time of arrest were sufficient to justify a reasonable belief that an offense was being committed." <u>Price</u>, 2016 WL 3876442, *5 (citation omitted).

Plaintiff was charged, in part, with Criminal Attempt, Homicide,18 Pa. C.S. §901a(A), and Aggravated Assault. A person commits criminal attempt when, with attempt to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime. Plaintiff was charged with attempt to commit murder based on the claim that it was

alleged he fired a shotgun at Loretta as she was in her bed. (Doc. 39-1 at 15).

Under Pennsylvania law, the charge of Aggravated Assault, 18 Pa. C.S. §2702, provides, in part, as follows:

(a) Offense defined. A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; [ ]

(4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon.

Here, the court finds that the probable cause determination does not rest on credibility conflicts and that in viewing the evidence most favorable to plaintiff, no genuine dispute of material fact exists as to whether defendants, based on the objective facts available to them at the time of plaintiff's arrest, had probable cause to arrest plaintiff. *See* Price, 2016 WL 3876442, *5 ("an arrest is made with probable cause if at the moment it was made the facts and circumstances within the officer's knowledge 'were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense.'") (citation omitted). The information defendants had when they arrested and charged plaintiff on November 7, 2018, as detailed

above, was well beyond sufficient to warrant a reasonable person to believe that plaintiff committed the charged offenses by firing his shotgun at Loretta on November 2, 2018 while she was in her bedroom. Loretta had reported the alleged incident to her doctor, then to Derenick, who, along with another officer, observed and photographed physical evidence at her house which was consistent with Loretta's story. Loretta was then interviewed at TBPD and gave a full description of the shooting incident in a written statement.

Further, prior to arresting plaintiff, ADA Price had approved of the charges to be filed against plaintiff and Roche was aware of this. "Under Pennsylvania law, ... '[c]riminal proceedings initiated on the advice of counsel are ... presumed to be supported by probable cause when the advice of counsel was sought in good faith and the advice was given after full disclosure of the facts to the attorney.'" <u>Price</u>, 2016 WL 3876442, *6 (citations omitted). "This presumption applies even if the prosecutor errs since "[t]he attorney's advice need not be correct." *Id.* (citation omitted).

Plaintiff contends that the investigation was not thorough and he points out that Loretta initially denied any attempted assault during the welfare check by TBPD officers, that TBPD officers did not speak with Loretta's neighbors prior to his arrest, that officers did not speak to him before his arrest, and that Roche did not speak to Loretta prior to his arrest. Plaintiff

also states that probable cause was lacking since he was arrested about 1½ hours "after being notified of a stale crime that allegedly occurred [5] days earlier." However, the undisputed evidence shows that Derenick and police officers spoke to Loretta and, after initially saying there were no problems, she told them plaintiff threatened her and fired his shotgun at her. Loretta also showed the police physical evidence to support her claim. Based on the totality of the circumstances known at the time of plaintiff's arrest, it was more than reasonable for defendants to believe that immediate action was required to prevent another incident between plaintiff and Loretta. Also, Roche had responded to domestic problems at the Simonson's house in the past. In short, Roche had the benefit of purported eyewitness information that Loretta had provided to Derenick and other officers, and he had sufficient knowledge from which he reasonably could believe there was probable cause to arrest and charge plaintiff with attempted aggravated assault. "Whether [plaintiff] actually *did* [attempt to shoot Loretta] does not matter for probable cause purposes; what matters is whether [defendants] reasonably believed that probable cause existed." Arditi, 216 F.Supp.3d at 556 (emphasis original). Additionally, "the evidentiary standard for probable cause is significantly lower than that required for conviction." Price, 2016 WL 3876442, *5 (citation omitted).

Further, it is of no moment that plaintiff states Loretta's version of the incident could not have been reasonably believed by Roche since, based on her story, he would have fired the shotgun again at her as he was allegedly running down the stairs with the gun and with Loretta following him. Such speculation by plaintiff cannot defeat defendants' summary judgment motion which is supported by undisputed material facts in the record. "On summary judgment, the moving party need not disprove the opposing party's claim, but does have the burden to show the absence of any genuine issues of material fact." *Id.* at 550 (citation omitted).

Despite the fact that the charges against plaintiff were withdrawn the day after his arrest this "does not alter the judicial findings that probable cause existed to bring these charges." Price, 2016 WL 3876442, *7.

Thus, defendants' motion for summary judgment will be granted regarding plaintiff's 4th Amendment claims against Roche in Counts I-III.

In Count VIII, plaintiff raises an unlawful seizure and search claim against both defendants under the 4th and 14th Amendments regarding his vehicle which was seized and impounded when he was arrested. Plaintiff alleges that his vehicle was searched and seized without a warrant, and that it should not have been impounded. Similarly, in Count I, plaintiff also raises a claim of unlawful search and seizure of his vehicle, alleging: "Defendant

Roche seized, searched and impounded Plaintiff's vehicle when he did not have legal authority for the same. Defendant Sergeant Roche did not have probable cause for such activities and Plaintiff did not consent to any physical seizure or impounding of his vehicle."

Initially, there is not sufficient evidence that Roche was personally involved in the seizure of plaintiff's vehicle. Roche did not know who made the call to Anthracite Auto to impound plaintiff's vehicle and there is no evidence showing for certainty that it was him. Nor is there any evidence to show that Roche participated in any search of plaintiff's vehicle, either with or without a warrant. Rather, Officer Holland prepared the search warrant for plaintiff's vehicle. Further, there is no evidence that Roche contacted other officers about seizing and searching plaintiff's vehicle. As such, Roche is entitled to summary judgment on Count VIII. *See* Arditi, 216 F.Supp.3d at 556 (court granted officer's summary judgment motion on plaintiff's claim that he unlawfully searched his vehicle since "there is no evidence that [defendant] Officer [] participated in the [vehicle] search in any way, or that he even communicated with [another officer] about conducting such a search."). *See also* Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (A "defendant in a civil rights action must have personal involvement in the

alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior.*").

Additionally, Roche testified that there was no search warrant for plaintiff's car when it was seized and impounded. As stated above, a search warrant for plaintiff's vehicle was later prepared and obtained by Holland since at the time of plaintiff's arrest, police officers were attempting to locate the shotgun plaintiff allegedly used to fire at Loretta, particularly since she stated that he threw the gun in his car after he ran out of her house. However, the warrant was not executed and plaintiff's vehicle was not searched after it was seized and impounded. Plaintiff's vehicle was then returned to him November 8, 2018. Defendants state that "[t]here was nothing unlawful about the seizure of Mr. Simonson's vehicle since, as discussed at length above, there was probable cause to arrest Mr. Simonson."

The court finds that probable cause existed to seize and impound plaintiff's vehicle in order to look for the shotgun he allegedly used to shoot at Loretta because there was sufficient probable cause to arrest and charge plaintiff for the shooting incident. It was more than objectively reasonable for defendants to believe that plaintiff's shotgun might have still been in his vehicle after the incident since it was not yet located and since he allegedly

drove to Loretta's house on the day of the shooting and threw the gun in the vehicle after he shot at Loretta.

With respect to the constitutional claims plaintiff asserts against the Borough in Counts VII and VIII under <u>Monell</u> for allegedly failing to adequate train Roche as to the probable cause required to arrest a citizen and for failing to train Roche on seizing a vehicle without a warrant, since the court has found no violations of plaintiff's constitutional rights by Roche, the Borough will be granted summary judgment on Counts VII and VIII. *See* <u>Williams v. Borough of West Chester</u>, 891 F.2d 458, 467 (3d Cir. 1989) (In general, as a matter of law, a <u>Monell</u> claim against a municipal defendant cannot proceed where plaintiff has failed to show he suffered a constitutional violation.).

In Count IV, plaintiff raises his 14th Amendment stigma-plus due process claim against both defendants alleging that they leaked information to the press about his arrest for attempting to shoot Loretta. In his amended complaint, plaintiff alleges that he was defamed by defendants since local news outlets, including WNEP 16 and FOX 56, covered his arrest, and that "Defendants made public stigmatizing statements to the local television and newspaper outlets about Plaintiff based on an unlawful arrest." He also alleges that "Defendants' comments damaged Plaintiff's reputation and the false statements were made in connection with an illegal arrest."

Specifically, in his deposition, Derenick stated as follows:

Q.    At the news conference [after plaintiff's arrest] I'm assuming Charles Simonson's name was mentioned?

A.    At the news conference, yeah, I believe the arrest had already been made and the name [of plaintiff] was given.

Q.    And who did you contact?

A.    I think it was the two local or the three. Might have been FOX 56, Channel 16 and Channel 2 and 28, which are the same. And I'm not positive, but I don't know if I reached out to the Scranton Times.

"[A] plaintiff may make out a due process claim for deprivation of a liberty interest in reputation by showing "'a stigma to his reputation plus deprivation of some additional right or interest.'" Kocher v. Larksville Bor., 926 F.Supp.2d 579, 600 (citing Dee v. Borough of Dunmore, 549 F.3d 225, 233–34 (3d Cir. 2008)). "The creation and dissemination of a false and defamatory impression is the 'stigma,' and the [deprivation of some additional right or interest] is the 'plus.'" Mazur v. City of Pittsburgh, 2019 WL 3068215, at *5 (W.D.Pa. July 12, 2019) (citation omitted). *See also* Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006) ("[T]o make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest.").

"The second, or 'plus,' requirement refers to the additional deprivation needed to transform a stigmatizing statement into a §1983 claim." D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield, 552 Fed.Appx. 110, 113 (3d Cir. 2014). "[T]he 'stigma-plus' test requires that the defamation be accompanied by an injury directly caused by the Government, rather than an injury caused by the act of some third party.'" Id. at 114 (quoting WMX Techs., Inc. v. Miller, 80 F.3d 1315, 1320 (9th Cir.1996)).

Although plaintiff states that "defamatory statements made 'in connection' with an unlawful arrest are actionable under §1983, since the unlawful arrest provides the necessary 'plus' factor", citing to Carbone v. City of New Castle, 2016 WL 406291, *5 (W.D.Pa. 2016), for support, this was not the court's conclusion in the case. Rather, the court was simply quoting the argument made by the plaintiff in the case. The court then pointed out that outside of the public-employment context, the Third Circuit has not determined what other types of deprivations are sufficient to state a stigma-plus claim. See id. The court in Carbone also noted that in Rehberg v. Paulk, 611 F.3d 828, 853 (11th Cir. 2010) aff'd, 132 S. Ct. 1497 (2012), the Court "explain[ed] that the plaintiff could not 'use the prosecution itself (the indictment and arrest) as the basis for constitutional injury supporting a §1983 defamation claim.") Id. at n. 3. The court in Carbone, id. at *7, then

"question[ed] whether Plaintiff would be permitted to recover for harm to her reputation as an element of damages on her unreasonable search and seizure claim [under the 4ᵗʰ Amendment] *and* for the damage to her reputation arising 'in connection with' her false arrest, which smacks of allowing double recovery." (emphasis original). The court concluded that plaintiff's claim alleging that she was defamed in connection with her alleged unlawful arrest should be analyzed under "the Fourth Amendment alone" and it dismissed plaintiff's 14ᵗʰ Amendment stigma-plus due process claim. *Id.* (holding that with respect to "Plaintiff's purported 'stigma-plus' claim, which is just 'a species within the phylum of procedural due process claims,' Plaintiff has not alleged that she was entitled to any 'process' beyond that which is called for by the Fourth Amendment.") (internal citation omitted).

In any event, assuming *arguendo* that plaintiff can bring a stigma-plus due process claim in this case for an alleged 4ᵗʰ Amendment violation, and that the evidence he submitted, (Doc. 42 at 12), is sufficient to show that his reputation was negatively impacted and that defendants defamed him by virtue of the news reports and alleged false statements they made to the press about his arrest, the undisputed evidence shows that plaintiff did not suffer a deprivation of some additional right or interest under the 4ᵗʰ Amendment since there was probable cause to arrest and charge him

regarding the shooting incident. As such, defendants are entitled to summary judgment with respect to Count IV.[8]

Finally, since the court is granting defendants summary judgment on all of plaintiff's federal claims, it will decline to exercise supplemental jurisdiction over his remaining state law claims, Counts V and VI, and these claims will be dismissed without prejudice. "A district court may refuse to exercise [supplemental] jurisdiction where, as in the instant case, 'the district court has dismissed all claims over which it has original jurisdiction.'" Kocher, 926 F.Supp.2d at 613 (citing 28 U.S.C. §1367(c)(3)). "In fact, 'where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" *Id.* (quoting Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995)).

---

[8]The court does not address defendants' penultimate argument that Roche is entitled to qualified immunity since it has found that he is entitled to summary judgment on plaintiff's constitutional claims based on the undisputed material facts.

However, the court notes that Roche would be entitled to qualified immunity since plaintiff cannot satisfy the first prong of the analysis, i.e., he has failed to show the violation of a constitutional right by Roche. *See* Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010).

## IV. CONCLUSION

The defendants' motion for summary judgment, (Doc. 38), will be **GRANTED** with respect to plaintiff's federal claims in Counts I-IV and VII-VIII of his amended complaint, (Doc. 15), and judgment will be entered in favor of defendants on these claims. Plaintiff's state law claims against defendants in Counts II, III, V and VI will be **DISMISSED WITHOUT PREJUDICE**. An appropriate order will issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE**: **March 30, 2020**
18-2445-02-Word